# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DAVID FITZPATRICK, as Personal Representative of the ESTATE OF RYAN R. FITZPATRICK, )))) | |
| Plaintiff, )) | |
| v. ) | Docket No. 2:10-CV-54-GZS |
| KENNETH P. COHEN, ))) | |
| Defendant. ) | |

## ORDER ON AMENDMENT TO WRONGFUL DEATH STATUTE

On April 6, 2011, the Court held a final pre-trial management conference in preparation for beginning trial on April 11, 2011. At the conference, the parties for the first time brought to the Court's attention an outstanding legal issue involving the 2009 amendment to Maine's Wrongful Death Act. The Court ordered the parties to submit memoranda discussing the issue and its potential impact by April 11, 2011. Having reviewed these memoranda (Docket #s 66 & 67), the Court now enters this Order to clarify the application of Maine's Wrongful Death Act to the claim now being tried before the jury. As explained herein, the Court concludes that the current version of Maine's Wrongful Death Act, which has been in effect since August 2009, governs this case.

By way of background, the following dates are important to the Court's analysis: On July 2, 2008, Ryan Fitzpatrick sustained serious injuries in a collision with a vehicle driven by Defendant Kenneth P. Cohen. On December 29, 2009, Ryan Fitzpatrick brought a personal injury action against Defendant in state court claiming Defendant's negligence caused his

injuries.[1]  (See Compl. (Docket #2-4).)  On February 11, 2010, Ryan Fitzpatrick was killed in a skiing accident at Sunday River in Bethel, Maine.  After Ryan passed away, Plaintiff David Fitzpatrick, appearing in his capacity as personal representative of the estate of his son and alleging that his son's death in 2010 was proximately caused by the 2008 accident, asserted a claim pursuant to Maine's Wrongful Death Act, 18-A M.R.S.A. § 2-804.  David Fitzpatrick first asserted this wrongful death claim in an Amended Complaint filed on April 29, 2010.  (See Am. Compl. (Docket # 11) ¶¶14-15.)

As the timeline above makes clear, the date of the accident (and alleged wrongful act) precedes the date of the death by almost a year and a half.  In the time period between the 2008 accident and the 2010 death, the Maine Legislature amended Maine's Wrongful Death Act.  This amendment became effective on August 28, 2009.  See An Act to Amend the Laws Concerning Wrongful Death, H.P. 316, L.D. 428, 124 Legis., 1st Reg. Sess. (Me. 2009).  Thus, the first question before the Court is which version of the wrongful death statute applies?

At the time of the July 2008 accident, the wrongful death statute provided, in pertinent part, that:

> The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death to the persons for whose benefit the action is brought … .

18-A M.R.S.A. § 2-804 (b) (former version).  The parties agree that this version of Maine's Wrongful Death Act limited the recovery of pecuniary injuries to losses actually sustained by Plaintiff David Fitzpatrick, who is the sole beneficiary of the estate.  In amending this statute in 2009, the Legislature deleted the final clause reading "for whose benefit the action is brought." See  P.L. 2009, c. 180, § 1.  Thus, on the day of decedent's death in early 2010, the statute

---

[1] This lawsuit was then removed to this Court by Defendant on February 8, 2010 (See Notice of Removal (Docket #1)).

provided, in pertinent part: "The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death … ." 18-A M.R.S.A. § 2-804 (b) (2009). The parties agree this change in the law—i.e., the removal of a requirement that any provable loss be tied to a particular beneficiary—has the potential effect of providing for full recovery of the decedent's lost earnings by the estate. Not surprisingly, Plaintiff argues that the 2009 amendments to the Wrongful Death Act apply to the pending claim while Defendant argues that Plaintiff's claim should be governed by the version of the statute that was in effect on July 2, 2008 (the date of the collision).

The Court finds that Plaintiff has the better of the argument. The Law Court has long held that the rights attaching to a death claim are created at the time of death. See Buzynski v. Knox County, 188 A.2d 270, 271 (Me. 1963) (a wrongful death "action is created on the death of the decedent"); Dostie v. Lewiston Crushed Stone Co., 8 A.2d 393 (Me. 1939) (a beneficiary's "right to compensation for his pecuniary loss vests as of the time of the death of the person killed, not at the time of bringing suit or of recovery"); Hammond v. Lewiston, A. & W. St. Ry., 76 A. 672, 673 (Me. 1909) ("But in any event the immediate, absolute, and final vesting of the right occurs at the time of the decease, not at the time of bringing suit or of recovery.").[2] Indeed, if Ryan R. Fitzpatrick had not died, Plaintiff David Fitzpatrick would not be involved in the current action. It follows, therefore, that the wrongful death claims brought here by Plaintiff, as personal representative, are governed by the law in effect at the time of his son's death. The Court notes that this same version of Maine's Wrongful Death Act was in effect at the time this lawsuit was initially filed in December 2009. See Rooney v. Sprague Energy Corp., 519 F.

---

[2] This diversity action is governed by Maine substantive law. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996).

Supp. 2d 131, 134-35 (D. Me. 2007) (finding, in the context of a Maine Human Rights Act claim, that complaints are generally governed by the law applicable at the time of filing).

The Court also alternatively concludes that the 2009 amendment to the statute did not substantively alter any rights or liabilities arising out of the 2008 accident. In other words, the legislative change did not make wrongful an act that was not wrongful previously. See *In re Guardianship of Jeremiah T.*, 976 A.2d 955, 960 (Me. 2009) ("An amendment may be deemed substantive if it changes the legal significance or consequences of acts or events that occurred before the amendment's effective date."). Therefore, the Court "appl[ies] 'the common law presumption that, absent language to the contrary, legislation affecting procedural or remedial rights should be applied retroactively." Id. (quoting Greenvall v. Maine Mut. Fire Ins. Co., 788 A.2d 165, 166 (Me. 2001) (collecting cases)). As the amendment to the wrongful death statute impacted only Plaintiff's remedy, even if the Court were to have found the 2008 accident to be the pertinent date, the Court would still hold that the 2009 version of the statute should be applied retroactively.[3] Thus, the Court concludes that Plaintiff may seek damages, including damages for pecuniary injuries resulting from Ryan's death, without proving loss to David Fitzpatrick. Any jury instructions on wrongful death damages will reflect this conclusion.

Having concluded that Plaintiff's wrongful death claim is governed by the version of the statute that became effective in August 2009, the Court confronts another issue that appears to be an issue of first impression in Maine: Under Maine's Wrongful Death Act, should the pecuniary

---

[3] In so holding, the Court acknowledges that Greenvall might be read as providing contrary authority. See Greenvall, 788 A.2d at 166-67. In Greenvall, the Maine Law Court held that a post-death amendment that increased the damage caps in the wrongful death statute "doubled one's potential liability for the loss of comfort, society, and companionship, and thus cannot be said to be purely procedural." Id. As in Greenvall, it is true that the change in the law here also creates the potential for an increase in the amount of pecuniary damages (the one category of uncapped damages under the statute). But, in Greenvall, the disputed amendment was made between the death (which occurred concurrently with the alleged wrongful act) and the filing of the lawsuit. Here, the dispute centers around a change in the law that was made after the alleged wrongful act but prior to the death and filing of the current lawsuit. In the Court's view, this difference makes Greenvall readily distinguishable.

loss caused by the death be reduced by the decedent's projected personal consumption? On this issue, Plaintiff asserts "a minority position" and argues that the Court should allow the estate to recover gross earnings without any reduction. (Pl. Mem. (Docket # 67) at 3.) While Defendant did not explicitly brief the issue, the Court assumes that Defendant disagrees with Plaintiff's asserted position. Admittedly, jurisdictions with so-called "loss-to-estate systems" appear to be split as to whether to require the deduction. See Stuart M. Speiser & James M. Rooks, Recovery for Wrongful Death § 6:52 *et seq*. (4th ed. 2010) (comparing net and gross earnings states). In the Court's view, awarding gross earnings would have the perverse effect of placing the decedent's estate in a better position than if he lived to earn the amount sought. The Court sees no reason to conclude that the 2009 amendments to the Wrongful Death Act sought to allow for an award of gross earnings. Therefore, the Court concludes that any pecuniary damages award on the wrongful death claim should reflect a deduction for the decedent's personal consumption.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 12th day of April, 2011.